UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SEGUIN STORAGE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-21-CV-1258-FB (HJB) |
| | § | |
| NSA PROPERTY HOLDINGS, LLC, | § | |
| NSA OP LP and OPTIVEST | § | |
| PROPERTIES, LLC, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Motion for Summary Judgment filed by Defendants NSA Property Holdings, LLC and NSA OP LP (Docket Entry 23) and joined by Defendant Optivest (*See* Docket Entry 43). Dispositive motions in this case have been referred to the undersigned for recommendation. (*See* Docket Entry 10.) For the reasons set out below, I recommend that Defendants' Motion for Summary Judgment (Docket Entry 23) be **GRANTED** and this case **DISMISSED**.

**I.   Jurisdiction.**

Plaintiff alleges violations of the Lanham Act, 15 U.S.C. §§ 1051, *et seq*, along with a number of state law claims. (Docket Entry 40.) The Court has original jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. I have authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. Background.

### A. *Factual Background.*

Plaintiff, Seguin Storage, LLC, is a Texas limited liability company formed on October 27, 2016. (Docket Entry 23-11, at 2.) It operates a self-storage facility known as "Seguin Storage." (Docket Entry 29-1, at 1.) In addition to the name, Plaintiff uses the following logo, featuring a bull superimposed over a lock: . (Docket Entry 29-1, at 1.)

On June 13, 2019, Defendant NSA Property Holdings, LLC acquired property located at 623 N. Highway 123 Bypass, Seguin, TX 78155. (Docket Entry 23-8, at 2.) The prior owner of the property conducted a self-storage business at the location under the name "Seguin Self Storage." (*Id.*) After NSA Properties acquired the property, Optivest began managing the facility and re-branding it as "Right Space Storage." (*Id.*)

Plaintiff began promoting its "Seguin Storage" facility "as early as January 22, 2018"; it gained renters in August 2019 and officially opened for business in October 2019. (Docket Entry 29-1, at 6.) Shortly after opening, Plaintiff discovered that the name "Seguin Storage" was being used in relation to Right Space Storage advertisements on Google, Bing, and other third-party websites. (*Id.* at 7.) Plaintiff contacted Neil Punt, the CFO of Optivest, regarding the advertisements and third-party websites. (*Id.*) Punt advised that Defendants were willing to work with Plaintiff to address the internet material. (Docket Entry 23-8, at 4.)

On November 21, 2019, Plaintiff sent Defendants a cease-and-desist letter. (*See* Docket Entry 23-2.) The parties communicated and eventually arranged for Defendants to send letters to the third-party website operators and for Plaintiff to pay the postage costs. (Docket Entry 23-1, at 172–183.) Defendants sent the letters in August 2020; the letters requested that the third-party

websites "immediately remove all references to 'Seguin Self-Storage' or 'Seguin Storage' from listings" that routed users to Right Space Storage.  (Docket Entry 29-1, at 65.)

In November 2021, Plaintiff discovered the following Google advertisement for Defendants' Right Space Storage facility:

> Ad · https://www.rightspacestorage.com/   ⋮   (830) 243-5232
> **Seguin storage**
> 50% Off 1-4 Months Ends Soon. **Seguin** Texas **storage** units are easy to reserve with $0 down & no obligation to move-in. Rent climate and drive-up **storage** near you. No long term contracts. Rent month to month. Clean & Well Lit. Packing & moving supplies.
> Storage Size Guide · Search by City or ZIP
> 📍 620 N Hwy 123 Bypass, Seguin, TX · Open today · 9:00 AM – 5:30 PM ▾

(Docket Entry 29-1, at 189.)

Shortly thereafter, Plaintiff filed an application with the United States Patent and Trademark Office ("USPTO") to register the words "Seguin Storage" as a trademark.  (Docket Entry 23-17.)  On September 19, 2022, the USPTO issued a letter notifying Plaintiff that its registration of "Seguin Storage" was refused because "the applied-for mark is primarily geographically descriptive of the origin of [its] services."  (Docket Entry 23-18, at 3.)

B.     *Procedural Background.*

On December 17, 2021, Plaintiff filed a complaint against Defendants NSA Property and NSA OP, alleging violations of the Lanham Act as well as common law claims for trademark infringement, unfair competition, unjust enrichment, breach of contract, and "manager and corporate parent liability." (Docket Entry 1.)  Defendants filed a motion for summary judgment as to all of Plaintiff's claims.  (Docket Entry 23.)  Plaintiff responded (Docket Entry 29), Defendants replied (Docket Entry 30), and Plaintiff filed a sur-reply with leave of court (Docket Entry 33).

After summary judgment briefing was complete, Plaintiff filed an amended complaint adding Optivest as a defendant. (Docket Entry 40.) Optivest joined the pending summary judgment motion as a moving party. (*See* Docket Entry 43.)

### III.     Legal Standard.

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (internal quotation marks omitted).

The moving party "always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (alterations omitted). When the movant would not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321.

### IV.     Analysis.

Plaintiff brings claims for violations of the Lanham Act and related common law claims for trademark infringement, unfair competition, and unjust enrichment; it also brings a breach of contract claim. (*See* Docket Entry 40.) This Report and Recommendation addresses the trademark-related claims together, before turning to the breach of contract claim.

### A. *Lanham Act Violations and Common Law Trademark Infringement, Unfair Competition, and Unjust Enrichment Claims.*

Plaintiff's federal claim, as well as its state claims for common law trademark infringement and common law unfair competition are all governed by the standards applicable under the Lanham Act. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions."). Plaintiff's unjust enrichment claim is likewise tied to these standards, as it is premised on Defendants' use of the Plaintiff's claimed mark. (*See* Docket Entry 40, at 16.)

For each of these types of claims, the Lanham Act requires a plaintiff to establish two elements: (1) ownership of a legally protectible mark, and (2) a likelihood of confusion resulting from infringement of that mark. *Id.* at 235–36 (citing *Bd. Of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008). Even if the elements are established, a defendant may prevail under the "fair use" defense. Each of these issues is considered below.

1. *Legally Protectable Mark.*

Section 45 of the Lanham Act defines the term "trademark" as including any word, name, or symbol used by a person to identify and distinguish his or her goods from those manufactured, sold, or provided by others and to indicate the source of the goods, even if that source is unknown. 15 U.S.C. § 1127.

To be protectable, a mark must be distinctive. *Amazing Spaces, Inc.*, 608 F.3d at 237. This may be shown in two ways: (1) a mark can be inherently distinctive, or (2) a mark can acquire distinctiveness through secondary meaning. *Id.* To determine whether marks are inherently distinctive, courts categorize them as either generic, descriptive, suggestive, arbitrary, or fanciful.

*Id.* at 240.  In general, the last three categories—suggestive, arbitrary, and fanciful—are deemed inherently distinctive and are entitled to protection.  *Id.*  Conversely, "generic terms receive no trademark protection, and descriptive terms merit protection only if they have secondary meaning."  *Id.* (alterations omitted).  Plaintiff bears the burden of showing that the mark is protectable.  *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

To resolve the legal issues, this Report and Recommendation first addresses two preliminary issues: first, which claimed mark is at issue in this case—Plaintiff's logo, or its "Seguin Storage" word mark; and second, whether the distinctiveness of the word mark must be considered by examining the words in isolation or the mark as a whole.  After resolving these preliminary issues, the Report and Recommendation addresses whether Plaintiff has carried its burden to show a legally protectable mark.

      a.      The relevant mark at issue.

The Court must first address the relevant mark at issue in the case.  Plaintiff presents both the "Seguin Storage" word mark and the composite logo mark [SEGUIN STORAGE logo], referring to them collectively as the "Seguin Storage Marks."  (*See* Docket Entry 12, at ¶ 8; Docket Entry 40, at ¶ 10.)  Plaintiff chides Defendants for failing to acknowledge that its composite mark is inherently distinctive.  (Docket Entry 29, at 6, 10 n.3.)  As Defendants respond, however, Plaintiff's composite mark is irrelevant: Plaintiff does not allege that Defendants ever used the composite logo mark in any way.  (Docket Entry 30, at 7.)  Because the only mark allegedly used was the "Seguin Storage" word mark, any inquiry into the distinctiveness of Plaintiff's composite mark is not relevant in this case.  *See All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 507–08 (5th Cir. 2018); *Igloo Prods. Corp. v. Brantex, Inc.*, 202 F.3d 814, 817 (5th Cir. 2000) (registration of the composite mark pertained to the whole mark rather than the words contained within the

6

mark). Accordingly, the Court's determination need only address Plaintiff's "Seguin Storage" word mark.

b. Consideration of the word mark as a whole.

Next, the Court should address the parties' competing approaches to analyzing the word mark. In arguing that Plaintiff's "Seguin Storage" mark is not protectable, Defendants break the mark down into its constitutive words, arguing that "Seguin" is a geographic descriptor and "storage" is a generic term for the services provided. (Docket Entry 23, at 14.) In determining distinctiveness of a multi-word mark, however, courts do not consider the words in isolation; they determine the distinctiveness of the mark as a whole. *See Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 451 (5th Cir. 2017) ("When evaluating a multi-word mark … we consider the mark as a unitary whole in its given arrangement, and do not parse apart the constituent terms."). Accordingly, the Court should consider the mark "Seguin Storage" as a whole when determining the level of protection, if any, to which it is entitled.

c. Whether Plaintiff's word mark is protectable.

As noted in *Amazing Spaces, Inc.* the distinctiveness of a mark is determined by reference to five different categories. 608 F.3d at 240. The last two categories—"generic" and "descriptive"—are potentially at issue with regard to the "Seguin Storage" word mark. The undersigned finds (as the parties appear to concede) that this mark should be categorized as descriptive. (*See* Docket Entry 23, at 14; Docket Entry 29, at 6.)

"A descriptive mark conveys information about the product or service." *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 814 (5th Cir. 2019). A mark is geographically descriptive if "the primary significance the term would have in the marketplace for the particular services in question is geographic, that is, that the term names a place." *Sarco Creek*

7

*Ranch v. Greeson*, 36 F. Supp. 3d 726, 731 (S.D. Tex. 2014).  That category applies in this case. *Cf. Bank of Texas v. Com. Sw., Inc.*, 741 F.2d 785, 788 (5th Cir. 1984) ("A name such as Bank of Texas … is descriptive of the type of services offered and the place from which such services originate.").

Because the "Seguin Storage" mark is descriptive, Plaintiff must demonstrate that the mark has acquired secondary meaning for it to be legally protectable.  *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 543 (5th Cir. 2015).  A mark develops secondary meaning "when, in the minds of the public, the primary significance of [the] mark is to identify the source of the product rather than the product itself."  *Id.* (quoting *Amazing Spaces*, 608 F.3d at 243–44). Stated differently, "the mark must denote to the consumer a single thing coming from a single source to support a finding of secondary meaning."  *Id.*

The burden of "demonstrating secondary meaning 'is substantial and requires a high degree of proof.'"  *Id.* at 544 (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 567 (5th Cir. 2005)).  The determination of whether secondary meaning has been acquired is "primarily an empirical inquiry," informed by the following factors:

- length and manner of use of the mark or trade dress,
- volume of sales,
- amount and manner of advertising,
- nature of use of the mark or trade dress in newspapers and magazines,
- consumer-survey evidence,
- direct consumer testimony, and
- the defendant's intent in copying the trade dress or mark.

*Nola Spice Designs*, 783 F.3d at 544 (citing *Amazing Spaces*, 608 F.3d at 248).  While none of the factors alone will prove secondary meaning, several factors in combination may establish the necessary link in the minds of consumers between a product and its source.  *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 190 (5th Cir. 2018).

In opposing summary judgment on this ground, Plaintiff argues that it has presented several items of evidence that show "Seguin Storage" has acquired secondary meaning, including that (1) it has used "Seguin Storage" in its advertising since "at least 2019;" (2) its annual revenue has increased to over $600,000; (3) its advertising expenses now exceed $16,000 and include, among others, advertising via radio and newspaper ads, social media, its website, brochures, and major community events; (4) it has received "unsolicited media coverage and recognition" by StorageUnits.com and the *Seguin Gazette*; (5) its customers leave positive reviews; and (6) Defendants' continued use of the mark evinces an intent to trade on Plaintiff's reputation. (Docket Entry 29, at 89; Docket Entry 29-1, at 9, 13.)

Contrary to Plaintiff's argument, most of these items of evidence fail to support a finding that the word mark "Seguin Storage" has acquired a secondary meaning. The amount of time Plaintiff has used the mark is "relatively brief," and does not weigh in favor of secondary meaning. *Nola Spice Designs*, 783 F.3d at 544 (considering three-and-a-half-year use). Nor does evidence of the amount and manner of advertising support secondary meaning; the Fifth Circuit has long recognized that "the question is not the extent of promotional efforts, but their *effectiveness* in altering the meaning of the term to the consuming public." *Amazing Spaces*, 608 F.3d at 248 (emphasis in original). Plaintiff has not produced evidence indicating whether the advertising had any effect on secondary meaning to the public.[1]

More importantly, Plaintiff has presented no empirical evidence, either in the form of a consumer survey or direct consumer testimony, to show secondary meaning. While such evidence "is not required to establish secondary meaning, it is 'the most direct and persuasive way of

---

[1] Similarly, while Plaintiff indicates it has been recognized by StorageUnits.com and the *Seguin Gazette*, it has presented no proof regarding the circulation of this media or the impact on public perception. *See Nola Spice Designs*, 783 F.3d at 546.

9

establishing secondary meaning.'" *See Nola Spice Designs*, 783 F.3d at 544 (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 795 (5th Cir. 1983), *abrogated on other grounds by*, KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111 (2004)); *see also Jones v. Am. Council on Exercise*, 245 F. Supp. 3d 853, 863 (S.D. Tex. 2017) ("[T]he absence of a survey weighs heavily against a finding of secondary meaning.")  The customer reviews Plaintiff presents do not suffice:  while they may indicate customer satisfaction, satisfactory reviews do not address how the meaning of Plaintiff's mark has been altered in the minds of consumers, nor do they show the necessary link in the minds of consumers between the product and its source.

Of the items discussed by Plaintiff, the volume of sales is the only factor which presents a close call.  In past cases, the Fifth Circuit has considered the sale of items grossing $30,500 to be too low a volume to show secondary meaning, but it affirmed a finding of secondary meaning when sales totaled $93 million.  *Compare Nola Spice Designs*, 783 F.3d at 544, *with Smack Apparel*, 550 F.3d at 478.  Here, Plaintiff's annual revenue has increased to over $600,000.  Even assuming this number is substantial enough to weigh in Plaintiff's favor, it is not sufficient, without more, to create a fact issue regarding secondary meaning.

Finally, Plaintiff's argument regarding Defendants' alleged continued use of the mark is insufficient to show secondary meaning.  The relevant inquiry for this factor is whether Defendants intended to derive benefits from Plaintiff's reputation by using the word mark.  *Beatriz Ball, L.L.C. v. Barbagallo Co., L.L.C.*, 40 F.4th 308, 319 (5th Cir. 2022).  For the reasons set out in Parts IV(A)(3) and IV(B), *infra*, Plaintiff has failed to raise a genuine dispute that the word mark, considered as a whole, was used by Defendants as alleged.  But even if it had made the requisite showing of use, Plaintiff's evidence is circumstantial at best and, absent some independent

showing of an established reputation, the use of the mark does not show that Defendants intended to benefit by trading on it. *See Beatriz*, 40 F.4th at 319 ("Evidence that a defendant intends to 'pass off' its product as that of another can be found through imitation of packaging, similar distribution methods, and more."); *cf. Pengu Swim Sch., LLC v. Blue Legend, LLC*, No. 4:21-CV-1525, 2023 WL 3044607 (S.D. Tex. Apr. 21, 2023) (holding defendant's e-mail communications containing examples of plaintiff's design and indicating it used the design as a reference when creating its own similar design was sufficient evidence of intent to copy).

In sum, considering the above factors and the high degree of proof required to establish secondary meaning, *see Nola Spice Designs*, 783 F.3d at 544, the Court should find that Plaintiff failed to raise a fact issue as to whether its mark acquired secondary meaning.

2.  *Likelihood of Confusion.*

Because the "Seguin Storage" mark is not distinctive, the Court need not consider the parties' arguments regarding any likelihood of confusion. *See Nola Spice Designs*, 783 F.3d at 546 ("The district court properly pretermitted discussion of likelihood of confusion" after finding marks were not distinctive and therefore not protectable).

3.  *Fair-Use Defense.*

Even if the Court were to assume that "Seguin Storage" is a protectable mark, Defendants would nonetheless be entitled to summary judgment on their fair-use defense.

Under 15 U.S.C. § 1115(b)(4), a defendant may defeat a claim of trademark infringement by establishing that "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, … of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." Essentially, the fair-use defense prevents a trademark registrant from appropriating a descriptive term for its

11

exclusive use to prevent others from accurately describing a characteristic of their goods. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980).

To prevail on the defense, Defendants must show that the term is (1) descriptive, (2) used in good faith, and (3) used to describe the party's goods or services and not in a trademark sense, *i.e.*, not to identify the user's goods or services. *See Sugar Busters, LLC v. Brennan*, 177 F.3d 258, 270–71 (5th Cir. 1999); 15 U.S.C. § 1115(b)(4).

As discussed above, Plaintiff's mark is descriptive. As to the remaining elements, Defendants have provided convincing evidence indicating they worked with Plaintiff to avoid any association with their facility and Plaintiff's facility and that they used the words "Seguin" and "storage" only as descriptors of the geographic location and nature of the services they offer, and not in the trademark sense. (*See* Docket Entry 23-8, at 5.)

Plaintiff responds that Defendants' use was in bad faith because they continued using the mark after representing they would not. (Docket Entry 29, at 23) It further claims that the use was in a trademark sense based on the following Google search result:

> Ad · https://www.rightspacestorage.com/   (830) 243-5232
> **Seguin storage**
> 50% Off 1-4 Months Ends Soon. **Seguin** Texas **storage** units are easy to reserve with $0 down & no obligation to move-in. Rent climate and drive-up **storage** near you. No long term contracts. Rent month to month. Clean & Well Lit. Packing & moving supplies.
> Storage Size Guide · Search by City or ZIP
> 620 N Hwy 123 Bypass, Seguin, TX · Open today · 9:00 AM – 5:30 PM

(Docket Entry 23-7, at 9.) Contrary to Plaintiff's argument, this evidence shows Defendants did not use "Seguin Storage" in their online advertising but instead used the words "Seguin" and "storage" (in lower case) as internet search criteria to describe the geographic location and its storage facility and to describe the services provided. This shows neither bad faith nor trademark use.

12

For the foregoing reasons, Defendants are entitled to summary judgment on the trademark-related claims.

**B.    *Breach of Contract Claim.***

To establish a claim for breach of contract, Plaintiff must prove (1) the existence of a valid contract; (2) its performance or tendered performance; (3) defendants' breach of the contract; and (4) damages as a result of the breach.  *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).  Defendants take issue with the first and final elements.

Plaintiff argues that a series of e-mails demonstrate a valid contract between the parties wherein Defendants agreed to no longer use the "Seguin Storage" mark and to deliver letters representing the same point to third parties and, in exchange, Plaintiff would pay the postage costs for the letters.  (Docket Entry 28, at 25–26).  Defendants argue that they never used the "Seguin Storage" mark and they never agreed to refrain from using "Seguin" and "storage" in a non-trademark manner.  (Docket Entry 23, at 23.)

Defendants' arguments are well-taken.  The e-mail communications Plaintiff relies upon do not demonstrate that Defendants ever agreed to no longer use the terms "Seguin" and "storage," either together as Plaintiff's "Seguin Storage" mark or separately (as Defendants contend they were previously using the terms).  (*See* Docket Entry 29-1, at 172–183.)  Without an agreement, there is no valid contract, and Plaintiff's claim must fail.[2]

**V.    Conclusion and Recommendation.**

Based on the foregoing, I recommend that Defendants' Motion for Summary Judgment (Docket Entry 23) be **GRANTED** and this case **DISMISSED**.

---

[2] Because no contract existed, this Report and Recommendation does not address Defendants' arguments regarding damages.

13

## VI. Instructions for Service and Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.

Written objections to this Report and Recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections.

A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on May 4, 2023.

_____
Henry J. Bemporad
United States Magistrate Judge