UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SEGUIN STORAGE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-21-CV-1258-FB |
| | § | |
| NSA PROPERTY HOLDINGS, LLC, | § | |
| NSA OP LP and OPTIVEST | § | |
| PROPERTIES, LLC, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendants' Motion for Attorneys' Fees and Costs. (Docket Entry 48). This motion was referred to the undersigned for consideration (Docket Entry 53), and a hearing was held on the motion on August 11, 2023. For the reasons set out below, I recommend that Defendants' Motion (Docket Entry 48) be **GRANTED IN PART** and **DENIED IN PART**.

**I.      Jurisdiction.**

Plaintiff's complaint alleged violations of the Lanham Act, 15 U.S.C. §§ 1051, *et seq*, along with a number of state law claims. (Docket Entry 40.) The Court has original jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. I have authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 54(d)(2)(D).

**II.     Background.**

The facts underlying this lawsuit are set out in the undersigned's previous Report and Recommendation (Docket Entry 44), which is generally incorporated here. The undersigned sets out limited facts concerning the underlying litigation and Defendants' current motion only as is necessary for the analysis in Part III.

**A.     *The Underlying Litigation*.**

In December 2021, Plaintiff filed this complaint against Defendants NSA Property Holdings, LLC and NSA OP LP (hereinafter collectively referred to "NSA"), alleging violations of the Lanham Act as well as common law claims for trademark infringement, unfair competition, unjust enrichment, breach of contract, and "manager and corporate parent liability." (Docket Entry 1.) Defendants filed a motion for summary judgment as to all of Plaintiff's claims. (Docket Entry 23.) After summary judgment briefing was complete, Plaintiff filed an amended complaint adding Optivest Properties, LLC ("Optivest"), as a Defendant. (Docket Entry 40.) Optivest then joined the pending summary judgment motion as a moving party. (*See* Docket Entry 43.)

The undersigned issued a Report and Recommendation which recommended that summary judgment be granted. (Docket Entry 44.) As to the Lanham Act and related state law claims, the Report and Recommendation addressed two elements of Plaintiff's proof: (1) ownership of a distinctive, legally protectible mark, and (2) a likelihood of confusion resulting from infringement of that mark. (*Id.* at 5 (citing, *inter alia*, *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010)). It also considered Defendants' "fair-use" defense. (*Id.* at 11–12.)

The Report and Recommendation concluded that the word mark "Seguin Storage" was a geographically descriptive mark for purposes of the Lanham Act, and thus that Plaintiff was required to demonstrate that the mark had acquired secondary meaning for it to be distinctive

2

enough to be legally protectable.  (Docket Entry 44, at 7–8 (citing, *inter alia*, *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 543 (5th Cir. 2015)).  The Report and Recommendation noted that the determination whether secondary meaning has been acquired is primarily an empirical inquiry, informed by a variety of factors, none of which was dispositive standing alone.  (*Id.* at 8.)  It also noted that the burden of demonstrating secondary meaning imposed a high standard of proof on Plaintiff.  (*Id.*)

Considering the applicable factors, the Report and Recommendation concluded that Plaintiff had not submitted sufficient proof to raise a genuine dispute as to the acquisition of secondary meaning for the "Seguin Storage" word mark.  (Docket Entry 44, at 11.)  Because the proof on secondary meaning was insufficient, Plaintiff had failed as to the distinctiveness element of its trademark claims; accordingly, the Report and Recommendation did not consider the "likelihood of confusion" element.  (*Id.*)  The Report and Recommendation did, however, consider Defendants' "fair-use" defense, finding that they were also entitled to summary judgment on this ground.  (*Id.* at 11–13.)  Finally, the Report and Recommendation concluded that Plaintiff failed to show an agreement sufficient to support its breach of contract claim.  (*Id.* at 13.)

The undersigned issued the Report and Recommendation on May 4, 2023.  (Docket Entry 44.)  Neither party objected to it, and it was adopted by the District Court on May 23, 2023.  (Docket Entry 46).  The Court entered judgment the same day.  (Docket Entry 47.)

      **B.**    *The Motion for Attorneys' Fees and Costs.*

On June 6, 2023, Defendants moved for an award of attorneys' fees and costs.  (Docket Entry 48.)  As prevailing parties in a Lanham Act proceeding, Defendants argued that they were entitled to attorneys' fees because this was an "exceptional" case within the meaning of 15 U.S.C. §1117(a).  (*Id.* at 3.)  They asked that they be awarded $104,197.50 in attorneys' fees.  (*Id.* at 13.)

They also asked for an award of $6,009.06 in costs, which was comprised of deposition transcript fees and their portion of the fee for the mediator in this case. (*Id.*)

Plaintiff opposed the motion (Docket Entry 52), and the undersigned held a hearing on the matter on August 11, 2023. At the hearing, Plaintiff conceded that the rates charged by Defendants' attorneys were reasonable, but contested whether the case was "exceptional" so as to justify those fees. Plaintiff also argued that any fee award should be apportioned to reflect those fees incurred in defending the Lanham Act claim, as opposed to Plaintiff's state law claims. Defendants contested these arguments. The parties agreed that costs may be awarded to the prevailing party under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920; they also agreed that, contrary to Defendants' motion, such costs should not include the mediator's fee.

**III.   Analysis.**

    **A.   *Attorneys' Fees.***

The parties generally agree as to the legal standards that apply to Defendants' "exceptional case" attorneys-fee request. (*See* Docket Entry 48, at 3; Docket Entry 52, at 4.) Under the Lanham Act, "an exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553–54 (2014)). The question of whether a particular case is "exceptional" is entrusted to a district court's "case-by-case exercise of [its] discretion, considering the totality of the circumstances." *Id.* Factors that may inform this analysis include "frivolousness, motivation, objective unreasonableness . . .[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6. "[A] case

4

presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*. at 555.

In this case, Defendants make three main arguments in support of a finding of exceptionality sufficient to warrant an award of fees: (1) Plaintiff's claims were meritless; (2) Plaintiff filed the suit for the purpose of harassment; and (3) Plaintiff litigated in an unreasonable manner. (Docket Entry 48, at 4–11.) Each of these arguments is briefly considered below.

      1. *The Merits of Plaintiff's Claim*.

In considering whether a case is "exceptionally meritless" so as to support a fee award, *see Octane Fitness*, 572 U.S. at 555, district courts often consider whether "a party fails to adduce any evidence to support its position or the party advances a position conclusively contradicted by the evidence." *RLIS, Inc. v. Cerner Corp.*, No. 3:12-CV-209, 2015 WL 5178072, at *1 (S.D. Tex. Sept. 3, 2015) (footnotes omitted) (compiling cases). Such is not the case here.

In this case, Plaintiff successfully showed that the word mark "Seguin Storage" could be protected as a geographically descriptive mark if it had acquired secondary meaning. (*See* Docket Entry 44, at 7–8.) Additionally, as the Report and Recommendation made clear, Plaintiff supported its secondary-meaning analysis by adducing several items of evidence. (*Id.* at 9.) Although the undersigned found, and the District Court agreed, that such evidence was insufficient to withstand summary judgment, the granting of summary judgment should not by itself render a case "exceptionally meritless" so as to justify a fee award. *See Nursery Decals & More, Inc. v. Neat Print, Inc.*, No. 3:19-CV-2606-B, 2022 WL 1913081, at *6 (N.D. Tex. June 3, 2022) ("[T]he fact that [defendant] lost its case, even on summary judgment, does not necessarily make the case exceptional.") (citations omitted); *cf. Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1315 (Fed. Cir. 2010) ("Defeat of a litigation position, even on summary judgment, does not

5

warrant an automatic finding that the suit was objectively baseless."). Accordingly, this factor weighs against a finding of exceptionality sufficient to warrant an award of fees.

        2.     *Improper Purpose.*

Defendants next claim that this case is exceptional because the facts "raise a strong inference that Plaintiff filed the action for the purpose of harassing NSA." (Docket Entry 48, a 7.) Defendants rely on the conclusion in the Report and Recommendation that there was "convincing evidence indicating [Defendants] worked with Plaintiff to avoid any association with their facility and Plaintiff's facility and that they used the words 'Seguin' and 'storage' only as descriptors of the geographic location and nature of the services they offer, and not in the trademark sense." (Docket Entry 44, at 12.) Defendants argue that, in light of this evidence, Plaintiff acted with an improper purpose when it filed suit, and that its "true motive was to harass NSA and to attempt to prevent NSA from using the terms 'Seguin' and 'storage' in the non-trademark sense so that Plaintiff could have an improper monopoly over those terms." (Docket Entry 48, at 8.) Plaintiff disagrees, presenting evidence that it had taken numerous steps over a two-year period in an effort to avoid litigation, and that Plaintiff itself had been threatened with trademark litigation by Defendants. (Docket Entry 52, at 12–13.)

The pleadings do not support a finding of exceptionality based on the purpose of this litigation. That the parties jostled for competitive advantage in advance of the filing of this action does not make this case exceptional; to the contrary, one would expect that such competitive actions would precede many, if not every, unfair-competition case. Moreover, the one case that Defendants cite in support of this argument, *Beastie Boys v. Monster Energy Co.*, fails to support an exceptionality finding; to the contrary, the court in that case ruled that a fee award was *not* appropriate under the Lanham Act, even though a jury "found that [the defendant's] conduct was

willful, intentionally deceptive, and in bad faith." 112 F. Supp. 3d 31, 46 (S. D. N.Y. 2015). Given these circumstances, Defendants' argument of a harassing purpose does not support their attorneys' fees request.

   3.  *Unreasonable litigation.*

Finally, Defendants argue that a finding of exceptionality is appropriate because Plaintiff litigated this case in an unreasonable manner. (Docket Entry 48, at 8–11.) A party may be found to litigate in an unreasonable manner when it files meritless or unsupported claims or defenses, engages in unreasonable behavior during the litigation, or causes unreasonable delay in bad faith. *See, e.g., Spectrum Ass'n Mgmt. of Tex., L.L.C. v. Lifetime HOA Mgmt. L.L.C.*, 5 F.4th 560, 567 (5th Cir. 2021) (litigation misconduct); *All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 296 (5th Cir. 2019) (meritless and unsupported defenses); *Tinker, Inc. v. Poteet*, No. 3:14-CV-2878-L, 2018 WL 4189705, at *3 (N.D. Tex. Aug. 9, 2018) (unreasonable delay).

Defendants argue that Plaintiff engaged in unreasonable behavior by misleading the Court as to the terms of its purported agreement with Defendant NSA upon which its contract claim was predicated. Defendants suggests that Plaintiff misrepresented whether it paid all costs associated with cease-and-desist letters sent to the third-party website operators by NSA's counsel. (Docket Entry 48, at 8–10.) Apparently, Plaintiff paid the mailing fees but not the legal fees that were sent by a separate invoice. (*See id*; Docket Entry 52, at 13–14.) This behavior did not occur during the litigation, but in 2020, a year before the lawsuit was filed; in any event, Plaintiff has presented affidavit evidence that any failure to pay was inadvertent, and Defendants' evidence tends to show that the failure to pay all fees was not brought to Plaintiff's attention until March 2023, after briefing was completed on summary judgment. (Docket Entry 48-4, at 2; Docket Entry 52-3, at 19–20.) Defendants argue that the non-payment should have been brought to the Court's attention

while the summary judgment motion was under consideration (*see* Docket Entry 48, at 9–10); even if true, this failure does not make this case so exceptional as to justify an attorneys-fee award. Certainly, this sequence of events does not support Defendants claim that "Plaintiff intentionally lied to the Court." (*Id.* at 8.)[1]

No other factor supports a finding of unreasonable litigation tactics in this case. The procedural background of the case shows that the parties engaged in reasonable advocacy on both sides. There were deadline and briefing extensions in this case, but they were based upon joint motions by the parties. (*See* Docket Entries 22, 24.) Plaintiff exceeded the page limit in responding to summary judgment, but it did so by motion without opposition from the defense. (*See* Docket Entry 26.) Although Defendants did oppose Plaintiff's motions to file a sur-reply to summary judgment and to join new Defendant Optivest late in the litigation, in both instances the Court found the motions to be well-taken. (*See* Docket Entries 31, 32, and 39; *see also* Text Order Nov. 15, 2022.) And when Optivest sought to join in the pending motion for summary judgment, Plaintiff did not oppose the request.

Finally, counsel for both parties represented at the motion hearing before the Court that, despite their adversarial position, they had enjoyed a good working relationship. All these circumstances counsel against any finding of unreasonable litigation strategy by Plaintiff.

---

[1] Defendants suggest that Plaintiff also violated its duty of candor regarding the denial of its application with the U.S. Patent and Trademark Office. (Docket Entry 48, at 10.) As Defendants concede, the denial occurred in September 2022 and was brought to the Court's attention two weeks later in the motion for summary judgment (*id.*); this short delay does not support a finding of "lack of candor" so serious as to warrant attorneys' fees. In any event, the denial of the application was not material to the Court's determination of the case, except perhaps in its finding that the "Seguin Storage" word mark was geographically descriptive—an issue the parties did not dispute. (*See* Docket Entry 44, at 7.)

For all these reasons, this case is not so exceptional as to warrant an award of attorneys' fees under the Lanham Act.

**B.     *Costs.***

Federal Rule of Civil Procedure 54(d)(1) states that, "[u]nless a federal statute, these rules, or a court order provides otherwise," costs other than attorney's fees "should be allowed to the prevailing party."  In this case, Defendants sought as costs their $1,500 portion of the mediation fee and the costs of four deposition transcripts.  (*See* Docket Entry 49-1.)  At the hearing before the undersigned, however, Defendants conceded that the mediation fee was not recoverable as a cost.

With regard to the deposition transcripts, Plaintiff questioned why there would be four separate transcript costs when there were only three individuals deposed: Neil Punt, Jordan Tag, and Timothy Oglesby.  (Docket Entry 52, at 20–21.)  However, as explained at the hearing before the undersigned, Timothy Oglesby was deposed both as a fact witness and as Plaintiff's corporate representative.  *See* FED. R. CIV. P. 30(b)(6).  Given this circumstance, awarding the cost of four transcripts is appropriate.

Accordingly, Defendants should be awarded a total $4,509.06, representing their billed costs minus the mediation fee.  (*See* Docket Entry 49, at 1.)

**IV.    Conclusion and Recommendation.**

Based on the foregoing, I recommend that Defendants' Motion for Attorneys' Fees and Costs (Docket Entry 48) be **GRANTED IN PART** and **DENIED IN PART**.  The request for

costs should be **GRANTED** in the amount of $4,509.06. The request for attorneys' fees should be **DENIED**.

## V.    Instructions for Service and Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.

Written objections to this Report and Recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections.

A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on August 15, 2023.

_____
Henry J. Bemporad
United States Magistrate Judge